**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHEWU AHMED,<br>Petitioner,<br>v.<br>LUIS SOTO, *et al.*,<br>Respondents. | Civil Action No. 26-10601 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Petitioner Shewu Ahmed's ("Petitioner") Second Petition for Writ of Habeas Corpus ("Second Petition") pursuant to 28 U.S.C. § 2241 challenging his continued detention. (ECF No. 1.) Respondents filed an opposition to the Second Petition (ECF No. 4), and Petitioner replied in further support (ECF No. 6). Following an Order from the Court, Respondents provided supplemental briefing (ECF Nos. 8, 10) and Petitioner replied (ECF No. 11). The Court considered the parties' submissions in support of and opposition to the Second Petition and decides the Second Petition without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Petitioner's Second Petition is **DENIED**.

## I. BACKGROUND

Petitioner, a native of Ghana, unlawfully entered the United States on November 23, 2021. *Ahmed v. Soto*, No. 26-7074, ECF No. 5-1 at 3. On the same day, Petitioner encountered Border Patrol agents. *Id.* Petitioner claimed a fear of returning to his country and was served with an expedited order of removal. *Id.* On December 10, 2021, Petitioner was released on interim parole. *Id.*

On March 18, 2026, an asylum officer interviewed Petitioner and found a negative claim of fear. *Id.*, ECF No. 5 at 2; ECF No. 5-4. On March 21, 2026, Petitioner's wife filed an I-130 application on his behalf. *Id.*, ECF No. 5-1 at 4. On April 24, 2026, immigration officials arrested Petitioner pursuant to an administrative warrant at the Newark Office of Enforcement and Removal Operations ("ERO") in Newark, New Jersey. *Id.*, ECF No. 5 at 2; ECF No. 5-6. Petitioner requested review of his negative fear finding by an Immigration Judge ("IJ") and was referred to the Immigration Court. *Id.* On May 6, 2026, an IJ affirmed the asylum officer's negative fear findings. *Id.*, ECF No. 5-7.

On June 13, 2026, Petitioner filed his first habeas petition, challenging his detention under 8 U.S.C. § 1225(b)(1). *Id.*, ECF No. 1. Respondents opposed the first petition, arguing that Petitioner was lawfully detained and subject to a final order of removal under 8 U.S.C. § 1231(a). *Id.*, ECF No. 5. On July 23, 2026, the Court issued an Opinion and Order, denying Petitioner's first petition. *Id.*, ECF Nos. 7, 8. The Court noted that Petitioner's final order of removal became administratively final on May 6, 2026, and that he remained within the 90-day mandatory detention period. *Id.* Accordingly, the Court found that Petitioner's challenge to his § 1231(a) detention was premature. *Id.*

On August 13, 2026, Petitioner filed the instant Second Petition arguing that (1) his continued detention under 8 U.S.C. § 1231(a) violates his constitutional rights, and (2) his continued detention is causing medical harm. (*See generally* ECF No. 1.) Respondents responded arguing that Petitioner's detention is not unduly prolonged (ECF No. 4), his removal is likely in the foreseeable future (ECF No. 8), and Petitioner is receiving adequate medical treatment (ECF No. 10). Petitioner replied. (ECF Nos. 6, 11.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner bears the burden of showing that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. DISCUSSION

Petitioner filed the instant Second Petition arguing that (1) his continued detention under 8 U.S.C. § 1231(a) violates his constitutional rights, and (2) his continued detention is causing medical harm. (*See generally* ECF No. 1.)

### I. Prolonged Detention

In his Second Petition, Petitioner argues that his 90-day mandatory detention "removal period" under §1231(a) has expired and Respondents have not shown that there is significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 9-10.)

The record establishes that Petitioner has been subject to a final order of removal since May 6, 2026, when the IJ affirmed the asylum officer's findings of negative fear. *Ahmed*, No. 26-7074, ECF No. 5-7. Section 1231 states in relevant part that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

This 90-day detention is mandatory. *See Zadvydas*, 533 U.S. at 683 ("While removal proceedings are in progress, most [noncitizens] may be released on bond or paroled. After entry of a final removal order and during the 90-day removal period, however, [noncitizens] must be held in custody." (internal citation omitted))

The removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, Petitioner's 90-day mandatory "removal period" began when the IJ affirmed the asylum officer's negative fear finding on May 6, 2026. 8 U.S.C. § 1231(a)(1)(B)(ii). The mandatory removal period expired on August 4, 2026.

ICE is not required to release the noncitizen once the removal period has expired, but "[d]ue process rights may be implicated where . . . there is no significant likelihood of removal in the reasonably foreseeable future." *Cepeda v. I.N.S.*, 273 F. Supp. 2d 222, 224 (E.D.N.Y. 2003) (citing *Zadvydas*, 533 U.S. at 701). In *Zadvydas,* the Supreme Court held that post-removal-order detention becomes constitutionally suspect only when it is prolonged beyond a presumptively reasonable six-month period and removal is not reasonably foreseeable. 533 U.S. at 701 (establishing a six-month presumption of reasonableness for post-removal-order detention). Petitioner's detention—measured from when ICE took him into custody on April 24, 2026—falls short of six months, rendering his claim premature.

Additionally, Petitioner "has not made an initial showing in this matter that his removal is not likely in the reasonably foreseeable future, and he therefore cannot show that his continued

detention under § 1231(a) is unlawful." *Calle Guaman v. Soto, et al.*, No. 26-cv-1783, 2026 WL 811353, at *2 (D.N.J. Mar. 24, 2026). Petitioner claims that Respondents have not identified a completed travel document, itinerary, scheduled flight, or date certain for removal. (ECF No. 1 at 9.) However, Respondents have provided a Declaration from Maurice E. Williams, a Supervisory Detention and Deportation Officer with ICE, ERO, Newark Field Office, in which he states that ERO has a photocopy of Petitioner's passport and has established Petitioner's identity. (ECF No. 8-1 at ¶ 3.) On September 3, 2026, ERO requested travel documents from the Embassy of Ghana. (*Id.* at ¶ 4.) The Declaration from Maurice E. Williams states that it generally takes 2-3 weeks to obtain the travel document, and once the Court lifts the no-transfer order, Petitioner's removal can be effectuated. (*Id.* at ¶¶ 4-5.) Petitioner has failed to overcome the six-month presumption of reasonableness for his post-removal-order detention.

**II. Conditions of Confinement- Medical Claim**

Petitioner raises a conditions of confinement claim regarding his medical care, arguing that his continued detention exposes him to a known and grave health risk and violates his due process rights. (ECF No. 1 at 10-11.) Petitioner claims that he has had two separate medical incidents requiring emergency medical treatment. (*Id.* at 6.) Petitioner argues that on or about May 31, 2026, Petitioner "swallowed or choked on broken plastic contained in food served at Delaney Hall." (*Id.*) Petitioner submits that on August 17, 2026, he was transported to the hospital because of high blood pressure. (*Id.*) In their response, Respondents provided a Declaration from Dr. Jamal Gwathney, the Chief Medical Officer for ICE Health Service Corps, and Petitioner's medical records. (ECF Nos. 10-1, 10-2.) Dr. Gwathney opined that Petitioner's medical complaints have been adequately addressed and that he has received adequate care. (ECF No. 10-1 at ¶ 18.)

In *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), the Third Circuit held that § 2241 may, in extraordinary circumstances, provide a vehicle for detainees to seek release based on unconstitutional conditions of confinement. *Hope* involved civil immigration detainees facing acute and imminent medical risk during the COVID-19 pandemic; the conditions at issue were so "severe" and "unique" that release was the only remedy capable of addressing the alleged constitutional harm. *Id.* at 323-325.

Crucially, however, *Hope* expressly reserved the question of whether less serious conditions, those not presenting the kind of existential threat confronted during an uncontrolled pandemic, could support a habeas claim. *Id.* at 325. Subsequent decisions have emphasized the "extraordinary" and fact-specific nature of *Hope*, limiting its reach. *See, e.g., Perri v. Warden FCI Fort Dix*, 2024 WL 3633567, at *2 (3d Cir. Aug. 2, 2024) (declining to extend *Hope* where "the extraordinary circumstances" present during the early COVID-19 pandemic were no longer present). Accordingly, "[a] conditions-of-confinement claim is cognizable in §2241 proceedings '*only in extreme cases*.'" *Folk v. Warden Schuylkill FCI*, No. 23-1935, 2023 WL 5426740, at *1 (3d Cir. Aug. 23, 2023) (emphasis in original) (quoting *Hope*, 972 F.3d at 324.)

Here, Petitioner argues that he has required emergency treatment since entering Delaney Hall. (*See* ECF No. 1 at 6-7.) The Court has reviewed the medical records Respondents provided and finds that the record does not establish an extraordinary circumstance. The medical records show that on May 31, 2026, Petitioner was transported from Delaney Hall to the hospital after complaining about swallowing plastic fragments while eating lunch and stating that he felt a foreign body sensation in his throat. (ECF No. 10-2 at 84-89.) The emergency department performed imaging, and no foreign body was identified. (*Id.* at 79.) On June 4, 2026, Petitioner was seen for a follow-up visit with complaints of throat irritation and was started on a 30-day

course of Protonix to address it. (*Id.* at 76.) On the same day, it was noted that Petitioner has hypertension and started Lisinopril (*Id.*) On June 15, 2026, Petitioner refused his scheduled medications, complaining of stomach pain. (*Id.* at 69.) He was "educated that abdominal pain is not a common side effect of antihypertensives." (*Id.*) On June 18, 2026, Petitioner complained of intermittent abdominal pain, but reported no new symptoms. Pecid was ordered, and a GI consult was requested. (*Id.* at 65.) On July 7, 2026, Petitioner was again transported to the hospital after complaining of abdominal pain following eating. (*Id.* at 52-57.) Petitioner received another CT scan, which showed no abnormalities. (*Id.* at 49.) Upon returning to Delaney Hall, Petitioner stated that his abdominal pain was resolved, and he was diagnosed with acid reflux. (*Id.*) Petitioner was started on Omeprazole and Norvasc. (*Id.* at 50.) On August 26, 2026, Petitioner complained of dyspnea and chest pain with difficulty breathing. (*Id.* at 45.) Petitioner was transferred to the hospital for further evaluation. (*Id.*) Upon returning to Delaney Hall, Petitioner's breathing was even and unlabored, and he stated that he felt fine.[1] (*Id.* at 38.) Petitioner is currently taking Lisinopril, Amlodipine, and Hydrochlorothiazide for blood pressure, and Pantoprazole as recommended by the gastroenterologist. (ECF No. 10-1 at ¶ 17.) The medical records show that Petitioner is being treated for his complaints and symptoms. Petitioner fails to present facts that Respondents are not providing him with appropriate medical care or that they are not capable of treating his medical conditions. As Petitioner has been receiving consistent care for his hypertension and abdominal pain, the Court finds Petitioner has not presented an extreme case or an extraordinary circumstance warranting habeas relief of release at this time. *See Hope*, 972 F.3d

[1] Petitioner claims he was also transported to the hospital on August 17, 2026 for high blood pressure. (ECF No. 1 at 7.) In his Declaration, Dr. Gwathney indicates that on August 17, 2026, Petitioner was again sent to the hospital for abdominal pain, and another CT scan revealed "unremarkable results." (ECF No. 10-1 at ¶ 14.) This incident is not in the medical r/ecords provided to the Court. (*See generally* ECF No. 10-2.) However, Petitioner is being treated for high blood pressure.

at 329 ("'mere disagreement' as to the response to the risk to Petitioner[ ] in light of their medical condition will not support constitutional infringement").

## III. CONCLUSION

For the reasons set forth above, the Second Petition (ECF No. 1) is **DENIED** ***without prejudice***. An appropriate Order accompanies this Opinion.

**DATED: 10/9/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**